UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

WAREHOUSE AT VAN BUREN STREET, INC.,

Debtor.

Chapter 11
Case No. 10-12719

## AMENDED PLAN OF REORGANIZATION

82674

Warehouse at Van Buren Street, Inc. (the "Debtor") proposes this Plan of Reorganization under Chapter 11 of the Bankruptcy Code dated February __, 2011 (the "Plan"). ALL CREDITORS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT"), AS APPROVED BY THE BANKRUPTCY COURT, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. NO OTHER SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## ARTICLE I

## DEFINITIONS

Whenever from the context it appears appropriate, each term stated in either the singular or the plural will include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, the feminine and the neuter. The words "herein", "hereof", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, sub-section or clause contained in the Plan. Unless the context requires otherwise, the following words and phrases will have the meanings set forth below when used in initially capitalized form in this Plan. Capitalized words and phrases not otherwise defined herein shall have the meaning ascribed to them in the Bankruptcy Code:

1.1.     Administrative Claim means any Professional Charge of a Chapter 11 Professional Allowed under § 503(b) of the Bankruptcy Code that become an Allowed Claim, the fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and Allowed Claims for actual, necessary costs and expenses incurred after the Filing Dates for preserving the Debtor's estate.

1.2.     Allowed means, with respect to Claims, (a) any Claim against the Debtor, proof of which is timely filed or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim that has been or is hereafter listed in the schedules of liabilities filed by the Debtor, as liquidated in amount and not disputed or contingent or (c) any Claim allowed pursuant to this Plan or by Final Order and, in each such case in (a) and (b) above, to which either (i) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) such objection is so interposed and the Claim will have been allowed by a Final Order (but only to the extent so allowed).

1.3.     Assets means all property of the Debtors as defined in § 541(a) of the Bankruptcy Code.

1.4.     Available Cash means the Debtor's Cash generated from the Debtor's employment which shall be on hand for payment of Distributions to parties entitled thereto under this Plan.

1.5.     Ballot means with respect to any Class of Claims that is Impaired and entitled to vote under this Plan, the forms being distributed to holders of Impaired Claims to be used for accepting or rejecting this Plan.

82674

1.6.    Bankruptcy Code means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time, as applicable to the Reorganization Case.

1.7.    Bankruptcy Court means the United States Bankruptcy Court for the Northern District of New York, or any court having jurisdiction under title 28 of the United States Code over the Reorganization Case.

1.8.    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as amended, from time to time, promulgated under § 2075 of Title 28 of the United States Code and the Local Rules of the Bankruptcy Court, as applicable to the Reorganization Case.

1.9.    Business Day means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.10.    Cash means cash and cash equivalents in U.S. dollars.

1.11.    Causes of Action means all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, claims, counter-claims and affirmative defenses whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

1.12.    Chapter 11 Professionals means the professionals retained by the Debtor wherever they are referred to collectively in the Plan, the retention of which has been approved by the Bankruptcy Court, and any other professionals who are authorized to be compensated from the estate by Final Orders of the Bankruptcy Court.

1.13.    Claim means (a) any right to (i) payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (ii) an equitable remedy for breach of performance if such breach causes a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or (b) any claim arising any time before the Confirmation Date for the alleged responsibility of the Debtor for any environmental conditions arising from an event that occurred before the Confirmation Date, despite when the clean up of such environmental condition commenced. When used with respect to any litigation, the term "Claim" will also include any claim that has been or could be asserted in such litigation. Notwithstanding anything to the contrary set forth in this Plan, for purposes of this Plan, the term "Claim" will have the broadest possible meaning permitted by applicable law.

1.14.    Claimant means the holder of any Claim.

1.15.    Class means any group of Claims classified by this Plan pursuant to § 1122 of the Bankruptcy Code, as described in Article II (Classification of Claims) herein.

82674

1.16.    <u>Confirmation Date</u> means the date on which the Confirmation Order entered on the docket maintained by the Clerk of the Bankruptcy Court with respect to the Reorganization Case becomes a Final Order.

1.17.    <u>Confirmation Hearing</u> means the date or dates on which the Bankruptcy Court conducts a hearing on confirmation of this Plan.

1.18.    <u>Confirmation Order</u> means the order of the Bankruptcy Court confirming this Plan.

1.19.    <u>Creditor</u> has the meaning set forth in § 101(10) of the Bankruptcy Code.

1.20.    <u>Date of Allowance</u> means (i) with respect to Disputed Claims, the date that an order is entered allowing a Claim to which an objection has been filed, or which has been scheduled as disputed or contingent or unliquidated or is otherwise Disputed, has become final and non-appealable; or (ii) as to any Claim allowed pursuant to the Plan, or scheduled by the Debtor and not Disputed, the Effective Date.

1.21.    <u>Disbursing Agent</u> means the Debtor, or their designees.

1.22.    <u>Disclosure Statement</u> means that certain Disclosure Statement to Accompany Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated January 3, 2011, including all exhibits and schedules thereto, as may be modified or amended, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code.

1.23.    <u>Disputed or Disputed Claim</u> means with respect to Claims, any Claim that is not Allowed.

1.24.    <u>Disputed Claim Reserve</u> means the reserve established for Disputed Claims according to this Plan.

1.25.    <u>Distributions</u> means payments to the various classes of Claims as provided in this Plan.

1.26.    <u>Effective Date</u> means a Business Day selected by the Debtor on or after the Confirmation Date on which the conditions to the effectiveness of this Plan have been satisfied or waived.

1.27.    <u>Entity</u> means any individual, corporation, limited or general partnership, limited liability company, joint venture, association, joint stock company, estate, entity, trust, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

1.28.    <u>Filing Date</u> means the date on which the Debtor's Reorganization Case was commenced.

82674

1.29.    Final Order means an order, ruling or judgment of the Bankruptcy Court or other court of competent jurisdiction that may hear appeals from the Bankruptcy Court (i) which is not stayed, (ii) the time to appeal or to seek review by motion for rehearing, petition for *certiorari* or otherwise from which having expired, without a pending appeal, motion for rehearing, petition for *certiorari* or application for review having been filed, and (iii) which is in full force and effect.

1.30.    Impaired means any Claim impaired within the meaning of § 1124 of the Bankruptcy Code.

1.31.    Liens means any secured Claim, mortgage or other liens, security interests, other interests, charges or encumbrances, in or in respect of the Debtors' property, real or personal, and the Cash and non-Cash proceeds thereof (including insurance proceeds).

1.32.    Person means any individual or Entity, regardless of the form of business organization.

1.33.    Priority Claim means Claims under § 507(a)(3) through § 507(a)(8) of the Bankruptcy Code.

1.34.    Professional Charges means the Allowed interim and final Claims for fees and expense reimbursement of Chapter 11 Professionals.

1.35.    Pro Rata Share or Pro Rata means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such class, or if the context so requires, to the amount of all Allowed Claims in a designated portion of such Class.

1.36.    Rejection Claim means any Claim arising out of the rejection of a lease or executory contract pursuant to § 365 of the Bankruptcy Code.

1.37.    Reorganization Case means the above-captioned chapter 11 case commenced by the Debtor.

1.38.    Schedules means the Schedules of Assets and Liabilities, the Schedules of Executory Contracts and Unexpired Leases and the Statement of Financial Affairs filed by the Debtor, pursuant to § 521 of the Bankruptcy Code, Rule 1007 of the Bankruptcy Rules and the Official Bankruptcy Forms of the Bankruptcy Rules as such statements and schedules have been or may be supplemented or amended through the Confirmation Date.

1.39.    Secured Claim means a Claim that is either:

   (i)    secured by collateral of the Debtor, the amount of which Claim is equal to or less than the value of such collateral (a) as set forth in this Plan, (b) as agreed to by the holder of such Claim and the Debtor, or (c) as determined by a Final Order in accordance with § 506(a) of the Bankruptcy Code;

82674

      (ii)     deemed a Secured Claim pursuant to this Plan; or

      (iii)    secured in the amount of any valid right of setoff of such holder under § 553 of the Bankruptcy Code.

1.40.     Unsecured Claim means any Claim arising prior to the Filing Date as against a Debtor, other than an Administrative Claim, Priority Claim, or Secured Claim.

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS

### 2.1    Administrative Claims.

All Administrative Claims that become Allowed Claims, including Allowed Claims of the Professional Charges of Chapter 11 Professionals, the fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and all Allowed Claims for actual, necessary costs and expenses incurred after the Filing Date for preserving the Debtor's estate, will be paid in full in Cash upon the Effective Date of the Plan or as otherwise agreed between the claimant and the Debtor. The Debtor estimates that professional fees shall be in the approximate amount of $15,000.00 to Nolan & Heller, LLP and $2,500.00 to Barbara S. Dwyer, CPA through confirmation of the Plan. In addition, fees incurred for any other professionals retained in this case shall be treated as administrative claims and paid as such upon due application and allowance by the Court.

### 2.2    Class 1. Secured Claim of Excel National Bank.

The Debtor is obligated to Excel on a note and mortgage with a principal balance of approximately $890,000.00, secured by a first mortgage on the Gas Station Property. The note provides for a 25 year amortization term, with interest at the prime rate plus two percent, adjusted on a calendar quarter basis. Commencing August, 2009, and continuing during the pendency of the case, Excel has received all lease payments on the Gas Station Property, and has applied those payments first to ongoing monthly payments on its note in the amount of $7,807.67, and then to arrears.

Excel has filed a proof of claim asserting, *inter alia*, a current interest rate of 6.5% per annum, accrued interest of $3,801.34, late fees of $14,604.46, and "other costs" totaling $17,627.57. The Debtor believes that the correct current interest rate under the note is 5.25% per annum, and that the correct monthly payment of principal and interest is approximately $5,800. The Debtor intends to object to Excel's claim to the extent an incorrect interest rate has been applied, or the claim is otherwise inconsistent with the terms of the note. The Debtor will attempt to resolve all such issues directly with Excel before filing an objection with the Court.

The Plan proposes to treat Excel Bank's claim as fully secured under the its existing loan documents, at such rate and in such amount as ultimately allowed by the Court, which shall remain in full force and effect under the Plan.

**This class is unimpaired and is not entitled to vote on the plan.**

82674

**Class 2. <u>Secured Claim of Clinton County for Real Estate Taxes</u>.**

The County of Clinton holds a secured claim against the Debtor's real estate for pre-petition taxes in the amount of $27,030.85. This claim shall be paid in full with interest at the rate of 3.25% in 20 consecutive quarterly payments in the amount of $1,469.80 per quarter, commencing the first full quarter following the effective date of the plan.

**This class is unimpaired and is not entitled to vote on the plan**

**Class 3. <u>Secured Claim of Janet L. Janosko (Billboard Property)</u>.**

Janet J. Jonosko holds a secured claim in the principal amount of $15,000, secured by the Debtor's interest in the Billboard Property. The Class 3 Claim will be paid with interest from the Petition Date at the rate of 5.25%, from the proceeds of sale of the Billboard Property to the NYDOT.

**This class is impaired and is entitled to vote on the plan.**

**Class 4. <u>Secured Claim of Janet L. Janosko and Adelard Bedard (Vacant Property)</u>.**

Janet J. Jonosko and Adelard Bedard hold a secured claim in the principal amount of $79,160.08, secured by the Debtor's interest in the Vacant Property. The Class 4 creditors filed a proof of claim asserting an additional $8,204.71 in interest and other fees and charges as of the Petition Date.

In the event the Debtor succeeds in its state-court action to set aside the conveyance of the Vacant Parcel to the County of Clinton, the Debtor intends to promptly sell the subject Property by auction sale. And the Class 4 claim, with interest on the principal balance from the Petition Date at the rate of 5.25% per annum, will be paid from the net proceeds of sale. In the event and to the extent the Debtor is not able to set aside the conveyance, or the proceeds of sale by the Debtor are insufficient to pay the Class 4 claim in full, the unpaid portion of the Class 4 claim shall be deemed a Class 6 fixed and liquidated unsecured claim.

**This class is impaired and is entitled to vote on the plan.**

**Class 5. <u>Priority Tax Claims (Bankruptcy Code § 507(a)(8)</u>:**

The Debtor is liable for the following priority tax claims:

A.      The New York State Department of Labor filed a claim totaling $9,650.89 representing unpaid unemployment taxes. $2,990.02 of this amount is secured by liens on the Debtor's real estate. Approximately half the total claim represents estimated amounts where no return has been filed. The Debtor intends to file any outstanding returns, and believes the amount due will be reduced. The NYS Dept of Labor shall continue to retain its lien on the Debtor's real property until the claim is paid in full. This claim shall be paid in 20 consecutive quarterly payments,

82674

with interest at the rate of 3.25% per annum, commencing the 1st day of the first full calendar quarter following the effective date of the plan. The amount of each quarterly payment shall be $645.68.

B.    The Internal Revenue Service filed a claim totaling $26,919.22, representing unpaid withholding taxes. $26,408.97 of this amount is secured by liens on the Debtor's real estate. The Internal Revenue Service shall continue to retain its lien on the Debtor's real property until the claim is paid in full. This claim shall be paid in 20 consecutive quarterly payments, with interest at the rate of 3.25% per annum, commencing the 1st day of the first full calendar quarter following the effective date of the plan. The amount of each quarterly payment shall be $1,766.86.

C.    The NYS Department of Tax and Finance filed a claim totaling $157,558.12, consisting of a secured claim in the amount of $68,946.13, priority claim in the amount of $85,312.84, and general unsecured claim in the amount of $3,299.15. The Debtor believes that the claim is overstated by approximately $69,500, and that the allowed amount of the claim is therefore approximately $88,000. The Debtor intends to filed an objection to the claim if needed to determined the allowed amount of the claimThe NYS Department of Tax and Finance shall continue to retain its lien on the Debtor's real property until the secured claim is paid in full. The secured and priority claims shall be paid in 20 consecutive quarterly payments, with interest at the rate of 3.25% per annum, commencing the 1st day of the first full calendar quarter following the effective date of the plan. The amount of each quarterly payment shall be $5,887.53. The unsecured claim of the NYS Dept of Tax and Finance shall be deemed a Class 6 fixed and liquidated unsecured claim.

**This class is unimpaired and is not entitled to vote on the plan**

**Class 6.  Fixed and Liquidated Unsecured Claims.** Class 6 shall consist of all timely filed, undisputed, allowed, fixed and liquidated unsecured claims. Holders of claims in this class shall receive payment 5% of their allowed claim amounts, payable in 20 consecutive quarterly payments, commencing the first day of the first calendar quarter following the effective date of the plan. The Class 6 claims total approximately $90,000, assuming inclusion of the entire Class 3 claim.

**This class is impaired and is entitled to vote on the plan.**

Projections of the Debtor's income, expenses and funds available for distribution to creditors are attached hereto and made a part hereof as Exhibit "A". **Creditors should be aware and understand that the attached financial information constitutes the Debtor's projected income and expenses based upon information known to the Debtor at the time the within Plan has been proposed and are based upon the Debtor's historical financial data, including during the pre-and post-petition periods. No representations are being made, and none should be assumed, that the projections represent a promise of actual future performance. This class is impaired and is entitled to vote on the plan.**

**Class 7. Equity Interest of Members.** Mr. Jakubowski holds 100% of the Debtor's stock. Mr. Jakubowski will not receive any dividend on account of his pre-petition equity interest in the

82674

Debtor unless and until all classes of creditors in a higher degree of priority have received payment in full of their allowed, pre-petition claims.

**This class is impaired and shall not receive a distribution under the plan and is deemed to have rejected the plan.**

**Leases and Executory Contracts.** To the extent not otherwise provided for pursuant to any order of the Court previously entered in this proceeding, the Debtor hereby rejects, and is deemed to have rejected, all pre-petition unexpired leases and executory contracts.

.

## ARTICLE III

## SOURCE OF FUNDING FOR THE PLAN

Distributions to Claimants under the Plan shall be made from the Debtor's Available Cash. "Available Cash" shall mean the Debtor's net rental income from real estate after payment of taxes and debtor service. Distributions shall also be made from real estate sales as described in the disclosure statement.

## ARTICLE IV

## PROCEDURE FOR RESOLVING DISPUTED CLAIMS AND IN RESPECT OF DISTRIBUTIONS

4.1    **Objection Deadline.** As soon as practicable, but in no event later than sixty (60) days after the Effective Date, unless otherwise authorized by the Bankruptcy Court upon *ex parte* motion by the Debtor, the Debtor shall file objections to Claims or Administrative Claims with the Bankruptcy Court and serve such objections upon the holders of each of the Claims and/or Administrative Claims to which objections are made, and to any other parties entitled to such notice.

4.2    **Authority to Oppose Claims.** On and after the Effective Date, the Debtor shall have the exclusive right of objecting to, disputing, defending against, and otherwise opposing, and the making, asserting, filing, litigation, settlement or withdrawal of all objections to, Claims and Administrative Claims. The Debtor shall have the power, upon notice to and approval of the Bankruptcy Court, in the exercise of his business judgment, to preserve, fail to preserve, settle, compromise or litigate any Claim or Cause of Action (except for any Claims or Causes of Action released or to be released pursuant to or in connection with the Plan) before any applicable or appropriate court, panel, agency or tribunal (including, where appropriate, the Bankruptcy Court) that the Debtor may have against any Person based on acts, omissions or events prior to the Effective Date.

4.3    **Estimation of Claims.** The Debtor may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim or Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether a Debtor previously objected to such Claim or

8                                                          82674

whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection.

4.4    **No Distributions on Disputed Claims or Administrative Claims Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or Distribution shall be made on account of any Claim or Administrative Claim to the extent that it is a Disputed Claim, unless and until such Disputed Claim becomes an Allowed Claim or Allowed Administrative Claim, consistent with this Plan. In addition, in accordance with § 502(d) of the Bankruptcy Code, no Distribution shall be made to an Entity from which property is determined by the Bankruptcy Court to be recoverable in an action under chapter 5 of the Bankruptcy Code, unless such Entity has paid the amount, or turned over any such property, for which such Entity is liable.

4.5    **Determination by Bankruptcy Court.** The amount of any Disputed Claim or Administrative Claim, and the rights of the holder of such Claim or Administrative Claim, if any, to payment in respect thereof shall be determined by the Bankruptcy Court, unless it shall have sooner become an Allowed Claim or Administrative Claim.

4.6    **Unclaimed Property/Unclaimed Personal Property.** If any Distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder, provided that the Debtor makes reasonable efforts to contact the holder to the extent appropriate. The holder of the Allowed Claim or Administrative Claim previously entitled to such Unclaimed Property shall cease to be entitled thereto, and such property shall be retained by the Debtor in whose case such Distribution was made pursuant to the terms of the Plan. The Debtor shall not make subsequent Distributions to recipients of unclaimed Distribution or to Claimants who fail to present Distribution checks for payment within ninety (90) days of the issuance of the check.

4.7    **Transmittal of Distributions and Notices.**

4.7.1    Any property or notice which an Entity is or becomes entitled to receive pursuant to this Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity at the address indicated on any notice of appearance filed in this Reorganization Case by that Entity or his authorized agent prior to the Effective Date. If no notice of appearance has been filed, notice shall be sent to the address indicated on a properly filed proof of claim or, absent such a proof of claim, the address set forth in the relevant Schedule of assets and liabilities for that Entity. Property distributed in accordance with this section shall be deemed delivered to such Entity regardless of whether such property is actually received by that Entity.

4.7.2    A holder of an Administrative Claim or Claim may designate a different address for notices and/or Distributions by notifying the Debtor in writing of that address. Any change of address of a party entitled to receive Distributions hereunder must be provided to the Debtor by registered mail in order to be effective. Such notification shall be effective upon receipt by the Debtor.

82674

4.7.3 **Disputed Claims and Disputed Payment.** The Debtor intends to investigate all filed Proofs of Claims. If a Proof of Claim is (i) duplicative of another claim, (ii) is improperly classified as to type of claim or priority of claim, (iii) sets forth an amount not supported by the Debtor's books and records, (iv) was untimely filed or (v) the Debtor has reason to believe is incorrect, the Debtor will file the appropriate pleadings with the Bankruptcy Court for a determination of the proper Claim amount or its existence pursuant to the Plan. If any dispute arises as to the identity of a holder of an Allowed Claim or Administrative Claim who is to receive any Distribution, the Debtor may, in lieu of making a Distribution to such Person, make such Distribution into a Disputed Claim Reserve until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute. The Debtor shall not have any liability if he acts in accordance with this section.

4.8 **Disputed Claim Reserve.** Pursuant to the Plan, the Debtor, together or individually, shall establish a Disputed Claim Reserve to insure payment of Disputed Administrative Claims and Disputed Claims. If any dispute arises as to the identity of a holder, or the amount, of an Allowed Administrative Claim or Claim who is to receive any Distribution, the Debtor may, in lieu of making a Distribution to such Person, make such Distribution into the Disputed Claims Reserve until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

4.9 **Withholding Taxes and Expenses of Distribution.** Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes. If no information is supplied, then the Debtor may withhold and pay to the appropriate taxing authority a reasonable amount as defined in the applicable tax code.

4.10 **Method of Cash Distributions.** Any Cash payment to be made by the Debtor pursuant to this Plan will be in U.S. dollars and may be made, at the sole discretion of the Debtor, by draft, check or wire transfer.

4.11 **Fractional Cents/De Minimis Payment.** When any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of less than $.005 and rounding up in the case of $.005 or more).

4.12 **Distributions on Non-Business Days.** Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

4.13 **No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim or Allowed Administrative Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim. Except as otherwise expressly provided herein, no Claim or Administrative Claim shall be Allowed to the extent it is for post-petition interest.

82674

## ARTICLE V

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 5.1    Assumption or Rejection of Executory Contracts and Unexpired Leases.

5.1.1    **Assumption or Rejection of Executory Contracts.** As of the Effective Date, all executory contracts and unexpired leases that exist between the Debtor and any Entity are hereby rejected, except for any executory contract or unexpired lease which has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date. Subject to the occurrence of the Effective Date, the rejection of any executory contract or unexpired lease pursuant to this Article shall be effective upon the earliest of the Confirmation Date, the date on which a Debtor who is a party to such executory contract or unexpired lease notifies the non-debtor party to such contract or lease of the effectiveness of such rejection, and the date specified as the effective date of rejection in any order of the Bankruptcy Court.

5.1.2    **Approval of Assumption or Rejection of Leases and Contracts.** Entry of the Confirmation Order shall constitute (i) the rejection, pursuant to §§ 365(a) of the Bankruptcy Code, of any executory contracts and unexpired leases assumed pursuant to § 5.1 of the Plan, and (ii) the approval, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to § 5.1 of the Plan.

5.1.3    **Cure of Defaults.** All cure payments which may be required by § 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease which is assumed under this Plan shall be made by the Debtor on the Effective Date or as soon as practicable thereafter. All requests for cure payments by a party to such assumed contract or lease must be filed within thirty (30) days after the Effective Date, unless the Debtor agrees to such cure payments. In the event of a dispute regarding the amount of any cure payment, the ability of the Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, the Debtor shall make such cure payments required by   § 365(b)(1) of the Bankruptcy Code following the later of the Effective Date (or as soon as practicable thereafter) or the date of the entry of a Final Order resolving such dispute.

5.1.4    **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.** Claims arising out of the rejection of an executory contract or unexpired lease pursuant to § 5.1 must be filed with the Bankruptcy Court no later than thirty (30) days after entry of the Confirmation Order. Any Claims not filed within such time will be forever barred from assertion against the Debtors, their estates and their property.

82674

## ARTICLE VI

## VESTING OF PROPERTY, DISCHARGE AND RELEASE

6.1     **Revesting.**  As of the Effective Date, the Debtor will be revested with all Assets free and clear of all Claims, Liens, security interests, assignments, encumbrances, charges, and other interests of claimants.  As of the Effective Date, the Debtor may operate and use the Assets free of any restrictions imposed by the Bankruptcy Code except as may be specifically set forth in this Plan and in all respects as if there were no pending Reorganization Case.

6.2     **Discharge.**  The Debtor shall be deemed discharged pursuant to § 1141(d) of the Bankruptcy Code with respect to each Class upon confirmation of the Plan, regardless as to whether holders of claims in each Class shall have filed  proofs of claim in the within case or have accepted the Plan.  Subject to the preceding sentence, upon payment in full of the amounts provided for under this Plan with respect to each Class, the claims of each such Class shall be deemed satisfied in full.

Upon confirmation of the Debtor's Plan, all parties asserting a claim against the Debtor which arose prior to the filing of the Debtor's petition shall be precluded from asserting any such claim against the Debtor, the re-organized Debtor, or their successors and/or assigns.  Except as otherwise provided in the Plan or the order confirming the Plan, the order confirming the Plan shall act as a discharge of any and all claims and liabilities of the Debtor as provided in 11 U.S.C. § 524 or § 1141 and such discharge shall void against the Debtor any judgment obtained to the extent that it relates to a claim discharged pursuant to the Plan.

All parties that have held or that hold or may hold a claim against the Debtor are permanently enjoined from taking any of the following actions on account of such claims: (a) commencing or continuing in any manner any action or proceeding against the Debtor; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor; (c) creating, protecting or enforcing any lien or encumbrance against the Debtor; (d) asserting any setoff or any right of subrogation or recoupment against the Debtor of any kind against any obligation due the Debtor; and (e) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the Plan or order confirming the Plan.

The Debtor injured by any willful violation of such injunction shall recover actual damages, including attorneys' fees and costs, and, in proper circumstances, may recover punitive damages from such willful violator.

6.3     **Full Satisfaction.**  Furthermore, but in no way limiting the foregoing, except as otherwise specifically provided by this Plan, the Distributions and rights that are provided in this Plan will be in complete satisfaction, discharge and release of (i) all Claims and Causes of Action against, liabilities of, Liens on, charges, encumbrances, security interests, obligations of and interests in the Debtor, the Assets, or the direct or indirect Assets and properties of the Debtor, whether known or unknown, and (ii) all Causes of Action, whether known or unknown, either directly or derivatively through the Debtor, or the successors and assigns of the Debtor based on the same subject matter as any Claim or any other interests, in each case, regardless of whether a proof of Claim was filed, whether or not Allowed, and whether or not the holder of the Claim has voted on this Plan, or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Confirmation Date that was or could have been the subject of any Claim, in each case regardless of whether a proof of

12

Claim was filed, whether or not Allowed and whether or not the holder of the Claim has voted on this Plan.

6.4    **Injunction Through Effective Date.** Except as expressly provided for in this Plan, all injunctions or stays entered in the Reorganization Case and existing immediately before the Confirmation Date will remain in full force and effect until the entry of the Discharge.

6.5    **Permanent Injunction.** Except as expressly provided for in this Plan, all Entities are precluded and permanently enjoined from asserting against: (i) the Debtor and (ii) the professionals and agents thereof, and (iii) the respective assets and property of any of the going, any Claim, which is discharged pursuant to this Plan. The injunction provisions and the release provisions set forth in this Plan, only release and enjoin prosecution of (a) any Claims discharged and Causes of Action identified in the Plan.

6.6    **Binding Effect.** On the Effective Date, according to § 1141 of the Bankruptcy Code, the provisions of this Plan will bind the Debtor, any Entity acquiring Assets under this Plan, and any holder of a Claim, whether or not the Claim is Impaired under this Plan and whether or not the holder of the Claim has accepted this Plan.

6.7    **Exculpation.** The Debtor and his respective representatives, advisors, attorneys and agents acting in such capacity shall have no liability whatsoever to any holder or purported holder of a Claim, or any other entity for any act or omission in connection with, or arising out of, this Plan, the Disclosure Statement, the negotiation of this Plan, the pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of this Plan, the Reorganization Cases, the consummation of this Plan, the administration of this Plan or the property to be distributed under this Plan, or any transaction contemplated by this Plan or the Disclosure Statement or in furtherance thereof, except for willful misconduct or gross negligence as determined by a Final Order, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

6.8    **Discharge and Release on Effective Date.** On the Effective Date, the Debtor will be released and discharged from any Claims or Causes of Action in any way related to the Debtor' Assets or this Reorganization Case, except as specifically otherwise provided herein.

**ARTICLE VII**
**RESERVATION AND SETTLEMENT OF CLAIMS**

7.1    The Debtor will retain and have the right to enforce any and all present and future rights, claims, avoidance actions, or any other causes of action against any Person, including rights that arose before, on or after the Filing Dates. Except as provided for in the Plan, all present or future rights, claims avoidance actions, or other causes of action against any Person that existed prior to the Effective Date are preserved without limitation. The Debtor may settle any such action as he deems appropriate without further Bankruptcy Court approval or any additional notice that Rule 9019 of the Federal Rules of Bankruptcy Procedure would otherwise require.

13

82674

The Debtor has conducted a preliminary analysis of Causes of Action under §§ 544, 545, 546, 547, 548, 549, 550, 551, 553 and 554 of the Bankruptcy Code, and in light of that review, has determined that there are no such Causes of Action to be pursued for the benefit of the Debtor's estate.

**In reviewing the Disclosure Statement and this Plan, and in determining whether to vote in favor or against this Plan, Creditors (including parties that received payments from the Debtors within ninety (90) days prior to the Filing Date) should consider that a Cause of Action may exist against them, that the Plan preserves all Causes of Action, and that the Plan authorizes the Debtor to prosecute the same.**

## ARTICLE VIII

## MODIFICATION OF THIS PLAN

8.1    **Modification.** The Debtor reserves the right, according to the Bankruptcy Code, to amend or modify the Plan before its substantial consummation by Bankruptcy Court Order. After the Confirmation Date, the Debtor may, upon order of the Bankruptcy Court, and according to § 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intentions of the Plan.

8.2    **Prior Votes on Modification.** A Claimant that has accepted or rejected this Plan will be deemed to have either accepted or rejected, as the case may be, this Plan as modified or amended, even if the modifications or amendments are made after the solicitation of votes of acceptance or rejection of this Plan, unless the Bankruptcy Court orders that such Claimant may change its previous vote within a time established by the Bankruptcy Court for such change to be made.

## ARTICLE IX

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE OF THIS PLAN

9.1    **Conditions to Confirmation.** This Plan shall not be confirmed unless the Confirmation Order shall be in form and substance reasonably satisfactory to the Debtor and shall have been entered by the Bankruptcy Court.

9.2    **Conditions to Occurrence of the Effective Date.** The Effective Date of this Plan shall occur automatically upon the filing by the Debtor of a Notice of Occurrence of Effective Date stating that the conditions set forth below have been satisfied or waived in writing by the Debtor.

9.2.1    All documents necessary in the reasonable opinion of the Debtor to consummate this Plan shall be in form and substance satisfactory to the applicable parties and shall have been executed and delivered by all applicable parties thereto;

9.2.2    The Confirmation Order shall have been entered; and

9.2.3    The Confirmation Order shall be unstayed and shall have become a Final Order.

14

82674

9.3     **Revocation or Withdrawal of this Plan**.

      9.3.1   The Debtor may revoke or withdraw this Plan prior to the Effective Date.

      9.3.2   If this Plan is revoked or withdrawn prior to the Effective Date, or the Effective Date does not occur because the conditions precedent thereto have not been satisfied or waived, then this Plan shall be deemed null and void. In such event, (i) the Debtor and all holders of Claims shall be restored to the *status quo ante* as of the day immediately preceding the filing of this Plan, (ii) all the Debtor's respective obligations with respect to the Claims shall remain unchanged, (iii) all of the Debtor's rights against all Entities shall be fully preserved, and (iv) nothing contained herein or in the Disclosure Statement shall be deemed an admission or statement against interest or to constitute a waiver or release of any Claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor or Entity.

## ARTICLE X

## GENERAL PROVISIONS

      10.1   **Notices.** Except as otherwise specified, all notices and requests will be given by any written means, including but not limited to, telex, telecopy, telegram, first class mail, express mail or similar overnight delivery service and hand delivered letters, and any such notice or request will be deemed to have been given when received. Notices will be delivered as follows:

Warehouse at Van Buren Street, Inc.
Attn: Roger Jakubowski
P.O. Box 1231
Champlain, New York 12919


and

Justin A. Heller, Esq.
Nolan & Heller, LLP
39 North Pearl Street
Albany, New York 12207
Phone: (518) 449-3300
Fax: (518) 432-3123


      10.2   **Confirmation by Non-Acceptance Method.** The Debtor hereby requests confirmation of this Plan pursuant to Bankruptcy Code § 1129(b) with respect to any Impaired Class that does not vote to accept this Plan.

82674

10.3   **Payment of Statutory Fees.** All fees payable pursuant to 28 U.S.C. § 1930 of the United States Code will be paid until the Court enters final decree closing the Debtor's case.

10.4   **Headings.** The headings used in this Plan are inserted for convenience only and constitute neither part of this Plan nor in any manner affect the provisions or interpretations of this Plan.

10.5   **Enforceability.** Should any provision of this Plan be determined to be unenforceable for any reason, such determination will in no way limit or affect the enforceability or operative effect of any other provision of this Plan.

10.6   **Exemption from Transfer Taxes.** Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes, documents, agreements, or instruments under this Plan, in furtherance of, or in connection with this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

10.7   **Counterparts.** This Plan may be executed in any number of counterparts, each of which, when executed and delivered, shall be deemed to be an original, but such counterparts shall together constitute but one and the same instrument. A facsimile or electronic transmission of a duly executed counterpart of this Plan shall be as valid, in all respects, as an original.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1   The Bankruptcy Court will retain jurisdiction of all matters arising out of or related to the Reorganization Case and this Plan as long as necessary for the purposes of §§ 105(a), 1127, 1142(a) and 1144 of the Bankruptcy Code and for, *inter alia*, the following non-inclusive purposes:

11.1.1 to decide any objections to the allowance, disallowance or subordination of Claims or a controversy as to the classification of Claims;

11.1.2 to decide and fix (i) all Administrative Claims, (ii) Claims arising from the rejection of any executory contracts or unexpired leases, (iii) Liens on any Assets or any proceeds thereof, and (iv) any other fee and expense authorized to be paid or reimbursed under the Bankruptcy Code;

11.1.3 to liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any Disputed, contingent or unliquidated Claims;

11.1.4 to adjudicate any matters as may be provided for in the Confirmation Order;

82674

11.1.5  to effectuate Distributions under and enforce the Plan;

11.1.6  to hear and determine any pending applications, adversary proceedings or contested matters including all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of this Plan, and matters concerning state, local and federal taxes according to §§ 346, 505 and 1146 of the Bankruptcy Code;

11.1.7  to amend or to correct any defect, cure any omission or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

11.1.8  to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

11.1.9  to consider any modification of this Plan pursuant to § 1127 of the Bankruptcy Code or modification of the Plan after substantial consummation, as such term is defined in § 1101(2) of the Bankruptcy Code;

11.1.10 to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code to the maximum extent of its jurisdiction; and

11.1.11 to enter final decrees closing the Reorganization Case.

17

82674

Respectfully submitted:

Dated: March __, 2011

WAREHOUSE AT VAN BUREN STREET, INC.

By: _____
Roger Jakubowski
President

Dated: March 29, 2011

NOLAN & HELLER, LLP
Attorneys for Debtor

By: _____
Justin A. Heller, Esq.
39 North Pearl Street, 3rd Floor
Albany, NY 12207
Tel.: (518) 449-3300
Fax: (518) 432-3123

82674